LÓPEZ DE TORD & ZAYAS PIZARRO, Plaintiffs and Appellants, *v.* HENRY G. MOLINA, Defendant and Appellee.

No. 4377.   Argued June 7, 1928.—Decided November 26, 1928.

*López de Tord & Zayas Pizarro* for the appellants.   *Henry G. Molina* and *M. León Parra* for the appellee.

MR. JUSTICE TEXIDOR delivered the opinion of the court.

In this case the appeal has been presented in the name of the plaintiff partnership of López de Tord & Zayas Pizarro. The partnership brought in the District Court of Ponce an action for malicious prosecution and libel against Henry G. Molina who demurred to the complaint, and in ruling on the demurrer the court rendered judgment against the plaintiffs who took the present appeal from that judgment.

738

The questions of fact raised by the complaint are summarized in the judgment appealed from. That is a great help, for the complaint covers twenty-six pages and it would be necessary for us to condense it into concrete and exact terms, a task which has been performed excellently by the trial judge. It reads as follows:

"This is an action for damages for malicious prosecution and libel. The complaint covers twenty-six pages and sets forth in detail the facts which, as alleged by the plaintiffs, form the ground for the two causes of action, one of them for malicious prosecution and the other for libel. The averments of the complaint are so lengthy, as several documents are transcribed therein, that we find ourselves compelled to condense them by transcribing those which are essential, for instance: that the plaintiffs are attorneys and have formed a partnership under the name of López de Tord & Zayas Pizarro and practice the profession before all of the courts of Porto Rico, having acquired a good name which has great value in their professional business; that each partner works for the benefit of the partnership and the matters taken before the Federal Court are conducted exclusively by partner Zayas Pizarro who in the bankruptcy case of the Porto Rico Drug Co. represented certain creditors before the referee in bankruptcy, F. E. Adams, and opposed the payment to Henry G. Molina of any sum for certain services alleged to have been rendered by him as attorney for the receiver, and the referee having allowed him $750, the matter was submitted to Hon. Ira K. Wells, Judge of the Federal Court, for final determination; that although Zayas Pizarro filed a brief opposing the payment to attorney Molina on several grounds, one of them being that attorney Molina had acted as attorney for the bankrupt prior to the bankruptcy proceeding and as attorney for several creditors, and in order to be appointed attorney for the receiver he had filed an affidavit to the effect that he had not been attorney for the bankrupt or for its creditors, and notwithstanding that affidavit he enclosed a bill for $1,000 for services rendered to the bankrupt and its creditors, this being one of the reasons for the refusal of the referee to allow a part of the claim; and it was likewise stated by Zayas Pizarro in his brief that notwithstanding the bankruptcy of the Porto Rico Drug Co., Molina, being attorney for the receiver, allowed the greater part of the assets of the bankrupt to be publicly sold by a notary in execution of a pledge without the intervention of the bankruptcy court and

without any motion from Molina for a stay of the sale; and the plaintiffs allege that one of the questions to be determined by Judge Wells is whether Molina, at the time of his appointment as attorney for the receiver, was really interested in said appointment; that defendant Molina then filed a motion to strike out the brief, averment 8 of said motion reading as follows:

" '8. That said brief also contains numerous statements which are absolutely false, as for instance, amongst others, on page 4 thereof:

" 'After having knowledge of the above facts, it is proper to say also that Mr. Henry G. Molina was quite interested in becoming the attorney for the receiver and also the attorney for the trustee (said allegation is absolutely false; the petitioner was never interested nor did anything at any time, to be appointed attorney for receiver, on the contrary, petitioner was reluctant to intervening in this case and only did so at the urgent request of creditors).

" ' . . . . . and it is an admitted fact that the said securities and property were sold and sacrificed after Mr. Molina was appointed attorney for the said trustee, and the sale was not stayed, because the attorney for the said trustee, Mr. Henry G. Molina, did not apply to the bankruptcy court for the stay of said sale, notwithstanding the fact that the trustee notified him of the convenience of said stay, and notwithstanding the fact that the receiver and his attorney were present at the said private sale.

" 'Each and everyone of said statements are false and needless to say, not in accordance with the record in this proceeding. No property of the bankrupt was sacrificed. There was no such private sale, but a public sale before a notary public, after due advertisement. The trustee (receiver) did not request petitioner to stay said sale, nor indicated any reason to petitioner why said sale should be stayed.'

"That Mr. Zayas Pizarro then answered that motion and in regard to the 8th averment stated as follows:

" 'We specifically deny allegation 8th of the Motion to Strike, and we specifically affirm that all statements of our brief are entirely true. It is true that Mr. Molina was interested in becoming the attorney for the receiver, because he stated to Mr. López de Tord, member of the firm of López de Tord & Zayas Pizarro, when he landed from New York, shortly after the banbruptcy, and at the office of attorney from San Juan, Mr. Damián Monserrat, that he was interested in being the attorney for the receiver, and that he was willing to have the bankruptcy proceedings dismissed if the receiver appointed by the

Insular Court, in the suit brought by the preferred stockholders against the Porto Rico Drug Co. before the District Court of San Juan, would appoint him his attorney. The same statement had been made personally by Mr. Molina to attorney Vicente Zayas Pizarro in front of restaurant La Mallorquina, and in his own office, the same day in which the U. S. Court rendered decision on behalf of the Insular Receiver, in the action brought by the American Colonial Bank before the U. S. Court; and later on after Mr. Molina was attorney for the receiver, and at the first meeting of creditors which started before the bankruptcy court, and at the office of the said Referee Mr. Molina was asked by Mr. Zayas whether he was interested in becoming the attorney for the trustee, inasmuch as Mr. Zayas was going to oppose such appointment and Mr. Molina answered more or less in the following way: Of course, I am interested, and I will be appointed attorney for the trustee, because at this time such appointment for me is a personal matter, *una cuestión de amor propio.* I want to know if Mr. Molina dares now to say that the above facts are not true and if the above facts do not prove beyond all reasonable doubt that he was in fact interested in both jobs.'

"The plaintiffs then allege that defendant Molina, without asking for any explanation from the plaintiffs and acting maliciously and with the object of injuring the professional reputation of the plaintiffs, presented in the Federal Court a petition for disbarment against the plaintiffs based on the facts previously stated and continues as follows:

" '4.—That although the said answer was signed and apparently prepared solely by Vicente Zayas Pizarro, he was not present when the alleged conversation took place and hence the said statement could only have been made by him because it was so represented to him by his partner, Carlos López de Tord. 5.—That the said statement is false and was known to be false by Carlos López de Tord and was willfully reproduced and made to this court by said Zayas Pizarro without investigating the facts with reference thereto other than to take the word of his said partner López de Tord; and said statement was willfully and maliciously made by the said Zayas Pizarro, as a member of said partnership and as attorney for their client aforesaid, in order to prejudice the deponent in the eyes of the Honorable Judge of this Court. 6.—That on or about Monday, October 18, 1926, Damián Monserrat Sr. telephoned deponent saying López de Tord was at his office and wanted to discuss the said Porto Rico Drug bankruptcy matter, whereupon deponent went to the office of said Monserrat. That all of the proceedings that have taken place in con-

nection with said bankruptcy and the receivership proceedings immediately prior thereto, were explained to said López de Tord, who thereupon stated substantially as follows: We all know what a receivership means in the Federal Court, such receiverships are very expensive. We know our own courts and can run a receivership thereon much cheaper. I think it would be better to withdraw the bankruptcy proceedings and turn the business of the Drug Company over to the receiver of the Insular Court. If you (referring to deponent and Monserrat Sr.) will withdraw the bankruptcy proceedings, I am quite willing that Molina should be attorney for the receiver, as I have great confidence in his ability, integrity, etc., etc. Whereupon deponent replied to said López de Tord that such procedure was impossible, as the adjudication had been already entered and notices sent out to all creditors and that deponent believed the unanimous consent of said creditors would be necessary to withdraw the bankruptcy proceedings, and deponent further said that such proceedings had been instituted precisely at the request of the majority of the creditors of the bankrupt and that in his opinion it would be impossible to get the consent of any substantial number thereof, not to mention unanimous consent. Said López de Tord doubted deponent's opinion to said effect and requested the deponent to study the matter; the conference ended and deponent dismissed the subject from his mind, never bothering to study the question and not hearing any further from said López de Tord or his partner Zayas Pizarro with reference to any other matter concerning said bankruptcy from that date. 7.—And deponent further shows that the said false and improper practice of said partnership, or at any rate of his partner Zayas Pizarro, who represents said partnership in proceedings before this court, is not exceptional with said firm, but their usual method of practice. That in a previous instance, to wit, in the matter of the bankruptcy of Manuel Aponte, and in connection with the alleged preference of the Santa Isabel Sugar Co. who was represented by deponent the said Santa Isabel Sugar Co. or its agents, were wrongfully and improperly bulldozed and threatened by the said Zayas Pizarro, as attorney for the trustee, in said case, behind deponent's back and without notification of deponent as to the communications which were being made by said Zayas Pizarro, and the representatives of said Santa Isabel Sugar Co. WHEREFORE deponent respectfully submits to the Honorable Judge of this Court, that the said conduct of the partnership López de Tord & Zayas Pizarro in making said false and malicious statements to the court, is improper and should not be tolerated by the court, and that it constituted a con-

tempt of court, in consequence whereof the said Carlos López de Tord and the said Vicente Zayas Pizarro should be disbarred temporarily or fined or otherwise disciplined by this court in order to punish them for said wrongful conduct and to serve as an example hereafter. Sigd. Henry G. Molina. Subscribed and sworn to before me this 28th day of January 1927. Lulu G. Donohue, Clerk U. S. Dist. Court for P. R. By Sgd. Mary Aguayo, Chief Deputy. Attest a true copy, Lulu G. Donohue, Clerk.'

"That notwithstanding an explanation given to defendant Molina by plaintiff López de Tord, said defendant insisted in proceeding with the case; that on January 31, 1927, Judge Wells issued the following order:

" 'In the District Court of the United States for Porto Rico. In the matter of Carlos López de Tord and Vicente Zayas Pizarro, Disbarment 1830. Order to Show Cause. Whereas, charges have been filed under oath by Henry G. Molina, a member in good standing of this Bar, against Carlos López de Tord and Vicente Zayas Pizarro, law partners practicing law under the firm name of López de Tord & Zayas Pizarro, alleging that the said firm, by its partner Zayas Pizarro, has made false and malicious statements with reference to the conduct of Henry G. Molina as attorney for the receiver who was appointed by the Referee in bankruptcy in the case of the Porto Rico Drug Co., bankruptcy No. 697, now, therefore, upon reading and filing the said charges, it is hereby Ordered, that the said Carlos López de Tord and Vicente Zayas Pizarro, both of whom are members of this bar, should show cause before this court on the 4th day of February 1927 at 2 P. M. as to the truth of said charge or charges, and if the same be true, why they or either of them should not be punished or disciplined by this court, and it is further ordered, that a certified copy of this order of the charges be sent by registered mail to said López de Tord & Zayas Pizarro forthwith. Done and ordered at San Juan, P. R., this 31st day of January 1927, Ira K. Wells, District Judge. Attest: A true copy, Lulu G. Donohue, Clerk.'

"That on the day of the hearing the plaintiffs appeared and filed their answer which is copied into the complaint and fills ten pages of it. Then the plaintiffs allege that during the hearing of the case and before its termination the court dismissed the petition of Molina for lack of cause of action for disbarment or for contempt of court; that defendant Molina knew that he had no cause of action against the plaintiffs and that his purpose was to intimidate the plaintiffs before the bankruptcy court to their prejudice; that the prosecu-

tion of the plaintiffs by the defendant had no cause or ground, especially as alleged in the 7th averment of the petition, and constituted a malicious prosecution for the purpose of injuring the reputation of the plaintiffs; that as a consequence thereof the plaintiff partners have suffered morally and their professional reputation has been affected in the Island and especially in Ponce, as the said proceedings have been made known to the public in general by the press; that the plaintiffs have suffered damages in the sum of $15,000, defendant Molina being responsible.

"It is alleged by the plaintiffs as a second cause of action for libel that the contents of the 7th averment of the petition for disbarment filed by defendant Molina are false and he knew them to be so, in spite of which he swore to the truth thereof with the malicious intention of damaging the good name and reputation of the plaintiffs; that said statements were irrelevant to the question raised before the Federal Court and defendant Molina did so with the intention of injuring the plaintiffs, which statements were known not only to the court, but to numberless attorneys who were present at the hearing of the case and to a great many people in Porto Rico who were informed through the press, and that the plaintiffs believe that they were published by the defendant maliciously and wrongfully in order to prejudice, lessen, injure and damage the professional reputation of the plaintiffs who were damaged in the sum of $15,000. Therefore, they pray for judgment for $30,000 and the costs."

In the same opinion, page 35 of the record, the district court said:

"Before proceeding further with this decision the court wishes to state as follows: In his original brief the defendant raised several important questions, some of which are not yet finally determined by our jurisprudence, which are of great interest and were copiously argued, citing texts and jurisprudence discreetly and without being personal. Notwithstanding that, the first brief of the plaintiffs signed by Zayas Pizarro in answer to the complaint contained personal allusions and carried the discussion into a ground quite extemporaneous, the effect being that the defendant in his brief replied in form and the plaintiffs insisted in their brief in a still more hostile manner. The court can do no less than censure these acts because the briefs submitted to it are for the purpose of enlightening the judge on the issues and to facilitate the better and quicker determination of such issues and not for the purpose of giving vent to personal animosities. We only quote what in a similar case, that of Benítez v. Borinquen

Trading Corporation, 33 P.R.R. 481, was said by our Supreme Court through Chief Justice Del Toro, as follows:

" 'Much rancor has been displayed in the prosecution of this action and this appeal. Not only in the brief of the appellee but also in the brief of the appellant have been used arguments and language of a personal nature that are entirely unnecessary; more openly and violently in the appellee's brief and more veiledly but not less intensely in that of the appellant.

" 'Considering all of the circumstances, we are of the opinion that both motions should be overruled, but the court must censure any departure from the good practice of limiting the discussion to the facts and the law without unnecessarily and passionately indulging in personalities.' "

We approve of the wise and discreet censure made by the district court. It is deplorable that this should occur between attorneys who apparently should have more facilities for controlling passionate impulses and preserving greater equanimity together with more sincere respect for the administration of justice. The field of judicial contest is, or should be, closed to any violence and from it should be excluded all that tends to personalism and harshness of expression. It is not a field of battle in which any kind of arms can be used, but an arena or tournament where both contenders should use only the sword of reason and the invincible power of the law for making their contentions triumphant. Apart from what this court said in the case cited, we should remember rule 23 of the district courts which reads as follows:

"Attorneys shall be required to confine their arguments to the question under consideration. Personal criticism among attorneys should be avoided and in case it should be indulged in, those guilty of it may be punished for contempt."

Violent language in a judicial proceeding injures not only the person to whom it is directed, but also the court in which it is used, because it violates the dignified composure which is indispensable for the highest function with which a man

may be entrusted, the custody and enforcement of the law and the administration of justice.

In the first pages of their brief the appellants refer to the censure expressed by the district judge. In beginning to read that brief we entertained the hope that a frank explanation would be offered of certain attitudes, but that hope was not realized because the first pages of the brief are dedicated to representing the other party as the only one responsible for what occurred, although the appellants say that out of respect for the court they deplore the occurrence.

Sixteen errors are supposed to have been committed by the district court.

It is necessary to classify and group these assignments and consider those which deserve to be considered.

We insist on the doctrine laid down by this court to the effect that phrases and concepts contained in the "Opinion" of the trial judge can not be made the basis of an appeal. Following that doctrine, the construction of the law, or the application of it to the concrete case, may be grounds for the appeal; but the comments of the judge and the language used by him are not.

Appeals are allowed from judgments. It has been held so by this court in the following cases:

"It is the judgment from which the appeal was taken that we have to consider and, if erroneous, to correct, and we are not greatly concerned with the disquisitions made by the trial judge on the law and the facts, as falling under his consideration. *Pellicier* v. *Fernández*, 19 P.R.R. 111. . . . . . appeals are allowed from the judgment and not from its reasonings. *Enrich* v. *Forteza*, 18 P.R.R. 446. . . . . . an appeal is not taken from the grounds of a judgment but from the judgment itself, which is what determines the rights of the parties in an action or proceeding. *Alcaide* v. *Morales et al.*, 26 P.R.R. 209."

It has been held likewise by this court that although the reasons or grounds on which a judge bases his judgment may not be in harmony with law, this would not be a reason for

reversal if other facts justified the judgment. *Díaz Caneja* v. *Administration,* 11 P.R.R. 194.

This does not mean that the parties are barred from discussing the juridical grounds of a judgment, or that this court may be, as regards the examination and scientific criticism of them. But the reasoning of the trial judge in an opinion is no ground for the appeal because a right determination of the matter before the court might be reached even on grounds of doubtful force. If the language used by a trial judge were allowed to be the subject of discussion a very great number of errors might be assigned giving different form and number to what might in reality be compressed into a single assignment. It is unquestionable that in appeals the important thing is not the number of errors assigned but their quality.

We understand in the present case that the important questions carrying weight and force for determining and deciding the issue are the following:

A. Whether or not there is in Porto Rico the action for malicious prosecution arising from a civil action.

B. Whether a petition for disciplinary punishment, even disbarment, addressed to and filed in a court of justice is of a privileged nature or may be a malicious publication and constitute libel.

Let us consider the first question.

There has been much discussion in the present case of the decision of this court in *Pares* v. *Ruiz,* 19 P.R.R. 323. A certain paragraph has been specially selected from it and from the paragraph certain words from which very important consequences are inferred. We refer to the following:

"The action called malicious prosecution arises *ex delicto* and is used for the recovery of damages to person, property or reputation shown to have proximately resulted from a previous civil or criminal proceeding, which was begun or continued with malice and without probable cause and terminated in failure."

In the discussion great stress had been laid on the words

"civil or criminal proceeding." It is true that no stress has been laid on the words "proximately resulted" which are of great importance.

Whatever may be the construction given to the words, other important elements should have been taken into account.

Thus, it is essentially important to bear in mind that in that case there was a complaint of a criminal nature, an action wherein criminal procedure was followed and the defendant was arrested and the action was dismissed later for lack of sufficient ground for prosecuting a certain person.

Furthermore, in the same opinion and in going into the fundamental question, this court said:

"In actions of malicious prosecution there are four essential elements which must be alleged and proven, to wit:

"1. That the plaintiff has been prosecuted by the defendant.

"2. That the prosecution ended favorably to the plaintiff.

"3. That it was instituted maliciously and without probable cause.

"4. That plaintiff sustained damages thereby. Field on Damages, section 686, p. 544; 26 Cyc. 8; *Breneman* v. *West,* 21 Tex. Civ. App. 19, 50 S. W. rep. 471; *Collins* v. *Campbell,* 18 R. I 738, 31 Atl. Rep. 832."

As may be seen, it is a question, not of civil proceedings, but of criminal process instituted by a complaint.

In the case of *Herbener* v. *Crossam,* cited in the case of *Pares* v. *Ruiz,* there was a criminal complaint wherein a man was charged with the commission of a crime and the man was arrested. (See *Herbener* v. *Crossam,* 55 Atl. Rep. 223). In *Stone* v. *Crocker,* 24 Pickering, Mass., 81, the same thing occurred, that is, there was a criminal complaint.

The citation of those two cases in which that circumstance occurred shows that it was not intended to give to the words "civil action" the stress or meaning now sought to be given to them.

In *Torres* v. *Ramírez,* 22 P.R.R. 419, we find also that there was a criminal complaint. In this opinion some cases

are cited which it is convenient to bear in mind and of which mention will be made. The juridical doctrine in regard to the essential elements of an action for malicious prosecution, cited in *Pares* v. *Ruiz, supra,* is ratified and affirmed in this opinion, and in the case under consideration there was a charge of false representation and fraud and a dismissal of the prosecution for lack of grounds on which to convict the defendant.

In *Paganacci* v. *Lebrón,* 24 P.R.R. 743, there was also a criminal complaint, as in the cases of *Fuentes* v. *Martínez,* 25 P.R.R. 80, *Mariani* v. *Porto Rican Express Co.,* 25 P.R.R. 579, and *Quiñones* v. *Rosado,* 28 P.R.R. 454.

*Zalduondo* v. *Sánchez,* 15 P.R.R. 216, has been cited. In it were made declarations of juridical doctrine which mark finally the origin of the actions *ex delicto.* In the ancient legislation criminal responsibility by reason of crime or fault carried with it civil liability to repair the damages caused by the criminal act. This was a consequence of the doctrine that the purpose of the penalty was not only a punishment for the disturbance of the peace by the commission of the offense but also reparation for the damages caused. The recognition of such action and of such responsibilities appeared from the Spanish Penal Code, Spanish Code of Civil Procedure and Civil Code which were in force in Porto Rico, cited in the opinion in this case. Sections 1089, 1092 and 1902 of the Spanish Civil Code have been embodied in our Civil Code, as said in the case of *Zalduondo* v. *Sánchez;* although section 1902 of that code refers exclusively to actions originating in acts or omissions where there was fault or negligence.

The said opinion refers to a case in which the damages resulted from the commission of a crime of which Zalduondo was the victim. The purpose of the civil action in that case was to secure compensation for the damages suffered by Zalduondo as the proximate result of the crime of assault and of the results therefrom in the person of the victim. The deci-

sion of this court in that case was to the effect that such action is consecrated by the ancient and the modern law in Porto Rico.

The case under consideration does not refer to an action for malicious prosecution. It establishes rules and doctrine with reference to the compensation for damages resulting from a criminal act and sets them out in a broad and general manner without specific reference to the case of malicious prosecution.

Did the filing by defendant Molina of his petition for disbarment or other disciplinary correction constitute a crime? Was be bringing a civil or a criminal action?

It seems to us unquestionable that an action for disbarment, a motion in that sense, has not a penal or criminal character. As a general rule the jurisprudence gives to proceedings for disbarment, whether temporary or permanent, a civil character, as tending not to the imposition of a penalty but to the protection of the courts and the profession.

"A proceeding to disbar an attorney for dishonorable conduct may be by rule of court and need not be conducted in the name of the Commonwealth." *In re McDonald,* 157 Ky. 92, 162 S.W. 566; *In re Bowman,* 7 Mo. A. 569; *In re Crum,* 75 N.W. 257.

It has been said also that disbarment proceedings are of a summary nature and originate from the inherent power of the courts over their officers and therefore they are considered as of a civil and not of a penal character. *Ex parte Wall,* 107 U. S. 265.

In the Act establishing a Committee on Character of March 11, 1909, sections 160 to 180 of the Compilation of the Revised Statutes of 1911, disbarment proceedings are given a civil and disciplinary character rather than penal. Although section 13 of that Act, or 176 of the Compilation, imposes on the Attorney General and his representatives or delegates the duty of prosecuting the charge, section 12 thereof intrusts the Supreme Court with the function of receiving the complaint against an attorney and of removing or

suspending him. If the proceeding were of a crimial nature, perhaps its prosecution would be entrusted to the district attorney and its decision to the courts generally having jurisdiction of criminal cases.

We hold that the proceeding for disbarment, or for other disciplinary correction, is not of a criminal nature and a petition to a court for that purpose has not the nature of a complaint nor the consequences of it, either civil or criminal.

As to the proposition that an action for malicious prosecution may arise from a civil proceeding, we have to distinguish.

Let us begin by asserting that there is no provision of the Civil Code or of the Code of Civil Procedure which clearly authorizes such an action. It is exceedingly risky to declare the existence of actions by analogy. But it is a fact that the Code of Civil Procedure has established a procedure for the arrest of a defendant debtor and it may be that an action for damages for wrongful arrest would be successful. The code wisely requires that the applicant for such arrest shall give security to respond for any damages resulting therefrom. In our opinion, then, the action for damages, besides being reasonable, is absolutely legal. See sections 144, 146 and 147 of the Code cited.

There remains the case of levying an attachment on property unlawfully with resulting damages. Such damages generally are covered by the security furnished by the petitioner for the attachment; but there are cases in which security is not required by reason of the document in which the obligation appears, and if the attachment should be levied maliciously and unlawfully, a civil action would arise from the damages caused thereby.

We are not confronted by either of those two cases.

This is not, therefore, a criminal charge maliciously and falsely made which might result both in criminal and civil responsibility. As to the petition for disbarment, as a civil or disciplinary proceeding, we fail to see how an action for

damages for malicious prosecution might arise under the statutes in force in Porto Rico.

The assignments of error with reference to this cause of action have no merit.

With reference to the action for libel, we affirm the judgment of the trial judge. After a profound study of the matter the trial judge reached the conclusion that the averments of the complaint did not show that defendant Molina acted in bad faith and without probable cause, and that as the petition filed in the Federal Court was a privileged communication, it can not be considered as libel. The paragraph of the opinion on this point reads as follows:

"In accordance with the law authorizing actions for libel of 1902 it is partly provided in section 4 thereof that a publication or communication shall not be held or deemed malicious when made in a legislative or judicial proceeding or in any other proceeding authorized by law, and that a publication shall not be presumed to be malicious when made to an insular official upon probable cause with the intention of serving the public interest or of securing the redress of a private wrong. That being so, there is no doubt whatever that the petition for disbarment filed by defendant Molina in the Federal Court was a communication made to a court of justice and as such was a privileged communication and that such privilege must be recognized, provided the charges contained in the petition had been made in good faith, and the court having decided that it did not appear from the averments of the complaint taken as a whole that the defendant acted maliciously and without probable cause, the conclusion reached by the Supreme Court in Franco v. Martínez is not applicable. Moreover, it was held in that case that no privilege existed because the defendant gave unnecessary publicity to the contents of his complaint, and this was also the ground on which that court based its judgment in Benet v. Hernández, *supra,* while in the case at bar there is no allegation whatever in the second cause of action that the defendant Molina gave publicity to the petition filed in the Federal Court, because, as we have seen in the Franco case, the fact of filing a verified complaint of this kind in a court does not constitute the publication of the libelous words which it might contain. The mere allegation in that cause of action that numberless lawyers who were present at the hearing and a large part of the

Porto Rican public were informed through the press of said proceedings is insufficient also to destroy their privileged character.''

For the foregoing reasons we find no ground for sustaining any of the errors assigned.

The judgment appealed from must be affirmed.

Mr. Justice Hutchison concurred in the judgment.